UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 16 CR 671 |
| v. | ) | |
| | ) | Judge Robert M. Dow |
| DAVID CASTANEDA-SOLIS | ) | |

**GOVERNMENT'S POSITION PAPER AS TO
SENTENCING FACTORS**

Defendant is coming before the Court for sentencing for having illegally returned to the United States after two prior criminal convictions and two prior deportations. To account for his criminal history and his refusal to abide by the laws of the United States, the government requests a sentence at the high-end of the 37 to 46 month guideline range. Such a sentence is sufficient but not greater than necessary to satisfy the principles set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a).

**I.    BACKGROUND**

On or about October 13, 2016, defendant was indicted on one count of illegal reentry to the United States after deportation, in violation of Title 8, United States Code, Section 1326(a). Dkt. No. 1. On December 19, 2016, defendant pleaded guilty to the indictment through a written plea agreement with the government. Dkt. No. 13. He is currently scheduled to be sentenced before this Court on March 31, 2017.

The facts of this case are set forth in the government's version of the offense, which is attached to the Presentence Investigation Report ("PSR") and are

incorporated by reference. In summary, defendant is a native and citizen of Mexico. PSR at ¶ 43. He once held lawful permanent residence status in the United States. However, on or about January 9, 2008, defendant was convicted of dealing in cocaine in the Superior Court of Marion County, Indiana, and was sentenced to 20 years' imprisonment (with 18 years' suspended). As a result, the Department of Homeland Security commenced administrative removal proceedings against defendant, through which he was ordered removed from the United States and lost his lawful permanent resident status.

On or about February 10, 2009, immigration officials removed defendant from the United States for the first time. Thereafter, defendant reentered the United States unlawfully. He was apprehended by law enforcement and, on or about November 3, 2011, was convicted of illegal reentry to the United States after deportation in the United States District Court for the Southern District of Indiana. For that conviction, defendant was sentenced to 46 months' imprisonment and three years' supervised release. On or about May 20, 2014, after serving his sentence, defendant was deported from the United States for the second time.[1]

After his May 20, 2014 deportation, defendant again reentered the United States unlawfully. On or about August 12, 2016, he was encountered by agents from Homeland Security Investigation as part of a separate investigation. As was noted in the PSR, defendant's arrest ultimately led to the seizure of weapons and other

---

[1] Defendant's supervised release has not been terminated and he faces a petition for violation of supervised release, which has now been consolidated into this case before this District Court under Case No. 17 CR 99.

contraband. To date, the defendant has not been charged with any offense in connection with that incident.

## II. ARGUMENT

### A. The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant a High Guidelines Sentence

#### 1. History and Characteristics of Defendant

The PSR references defendant's remorse for having broken the immigration and criminal laws by unlawfully reentering the United States for the third (known) time. Against this bare assertion of remorse lies defendant's conduct, which reflects repeated violations of immigration laws despite warnings of potential consequences and then an indifference toward those potential consequences.

Defendant's history with the criminal justice system began before his first 2009 removal from the United States. At that time, he stood before a state criminal judge and was sentenced to 20 years' imprisonment for dealing cocaine. Since virtually all sentencing hearings before criminal courts include a judge's explanation of the seriousness of the particular offense, the defendant likely heard about the impact of criminal violations in the United States and the need to avoid future criminal conduct. Thereafter, when defendant was deported from the United States in 2009, he was advised of the possible criminal consequences to reentering the country without appropriate permissions. Defendant's behavior, in direct opposition to those warnings, reflects a willingness to ignore those laws if he sees fit.

After receiving warnings against reentry in 2009 and subsequently ignoring those warnings and unlawfully reentering the United States, in 2011, defendant

3

against stood before a criminal court judge, this time in the United States District Court for the Southern District of Indiana. In 2011, defendant pled guilty to reentering the United States unlawfully. Again at that time, defendant likely heard from the sentencing judge about the need to obey the laws going forward. When the defendant was deported after completing a 46-month sentence of imprisonment, immigration officials once again warned him of the potential consequences for reentering the United States without appropriate authorizations.

After receiving these warnings and serving his sentence of imprisonment, defendant engaged in exactly the same criminal conduct as was at issue in the 2011 case and reentered the United States once again. Defendant's words may claim remorse and imply a respect for this court process. His actions indicate otherwise. Defendant's conduct reflects his disrespect for this court system and the sentences imposed for criminal violations.

The PSR states that the defendant's claimed motivation for reentering the United States on this third (known) occasion was to be with his family. *See* PSR ¶ 46-47. According to that Report, defendant has three children in the United States through two relationships. *Id*. Defendant's parents and five siblings also reside in the United States, and have done so since defendant was a teenager. While these factors may reflect the defendant's equities in the United States, they also prove why the defendant is likely to follow his prior patterns of ignoring the immigration and criminal laws of this country and return once again without authorization.

Accordingly, a more significant sentence is appropriate in this case to account for defendant's incentive to unlawfully reenter the United States in the future.

### B. Seriousness of the Offense and the Need to Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

A sentence at the high end of the sentencing guideline range also reflects the seriousness of defendant's offense of illegal reentry, which continues to be a problem in the United States. Such a sentence also will promote respect for the law, which defendant has disregarded to date.

In 2015, the Department of Homeland Security apprehended over 450,000 aliens.[2] During that same year, over 300,000 aliens were removed from the United States pursuant to orders of removal, with over 40,000 removed to Mexico.[3] Approximately 99% of individuals removed from the United States by Immigration and Customs Enforcement fell into one of the Department's criminal enforcement priorities for the 2015 year.[4] These numbers reflect the importance of the instant prosecution in not only specific deterrence for the defendant but in general deterrence as well.

Finally, for the following reasons, there is a specific need for deterrence in defendant's case that can be met through a high guideline sentence. This will be defendant's second sentencing hearing for exactly the same criminal offense, illegal

---

[2] www.dhs.gov/immigration_statistics/yearbook/2015/table (combining apprehensions by the DHS components, Customs and Border Protection, Homeland Security Investigations, and Enforcement and Removal Operations).
[3] www.dhs.gov/immigration_statistics/yearbook/2015/table39.
[4] www.ice.gov/sites/default/files/documents/reports/2016/removal-stats-2016.pdf.

reentry after deportation. The 46-month sentence of imprisonment that defendant received in 2011 currently aligns with the high end of the guideline sentence applicable to his current offense. Even with that 46-month sentence, defendant was undeterred and chose to reenter the United States unlawfully following that conviction. This behavior highlights the importance of this sentence in deterring defendant from repeating this same conduct and to encourage him to follow the law in the future. That goal can be met by imposing a sentence that remains at the high end of the 37 to 46 month guideline range.

## IV. Conclusion

For the reasons set forth above, and in consideration of the factors enumerated under 18 U.S.C. § 3553(a), the government respectfully requests that this Court impose a sentence at the high end of the sentencing guideline range.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney


By: /s/ Kristin Linsley
KRISTIN LINSLEY
Special Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5361